**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY MARSH II,<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN BEWLEY, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-cv-683 (RDM) |

**MEMORANDUM OPINION AND ORDER**

At least as alleged in the complaint, the facts of this case are straightforward. Plaintiff Anthony Marsh alleges that he was walking his dog on January 20, 2021, when two Metropolitan Police Department ("MPD") officers, Anthony Delborrell and John Bewley, approached him. They claimed to see a "bulge" in his pocket that resembled a gun, and, on that basis alone, they stopped and searched him. On Plaintiff's telling, however, the officers' claim was baseless; he was not carrying a gun, and more importantly, it is "highly unlikely" that the officers actually believed that he was carrying a gun. Instead, according to Plaintiff, the officers stopped and frisked him in knowing violation of his rights. Based on these allegations, Plaintiff asserts three claims against the two MPD officers and the MPD itself. He asserts a claim for negligence, false imprisonment, and a violation of his Fourth Amendment rights. Although he does not identify the cause of action for his federal law claim, he presumably intends to premise that claim on Section 1983, 42 U.S.C. § 1983.

Defendants' motion to dismiss for failure to state a claim, Dkt. 7, and Plaintiff's request for leave to file an amended complaint, Dkt. 8, are currently before the Court. For the reasons explained below, the Court will **GRANT** the MPD's motion to dismiss all claims against it, will

**GRANT** Defendants' motion to dismiss the two common law counts, will **DENY** the individual Defendants' motion to dismiss Plaintiff's Section 1983 claim, and will **GRANT** Plaintiff leave to file an amended complaint adding the District of Columbia as a defendant in lieu of the MPD, but only on the condition that he can, in good faith, allege a relevant policy or custom, as required under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

## I. BACKGROUND

For the purposes of Defendants' motion to dismiss, the Court takes Plaintiff's factual allegations as true. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015).

According to Plaintiff, he "was walking his dog around the neighborhood where he resides" on January 20, 2021. Dkt. 1-1 at 4 (Compl. ¶ 8). Officers Delborrell and Bewley approached him, claiming to see a "'bulge' in his pocket which they thought could have been a gun." *Id.* (Compl. ¶ 9). Plaintiff did not "blade his body in a suspicious manner or increase his pace," and, in fact, "there was no bulge" in his pocket. *Id.* at 5 (Compl. ¶ 13). As a result, there was no basis reasonably to believe that he possessed a gun. *Id.* The officers, nonetheless, "demanded [that] [Plaintiff] [] stop" and "accus[ed] him of carrying a weapon." *Id.* at 6 (Compl. ¶ 19). During the stop, the officers "restrict[ed]" Plaintiff from returning to his home and demanded that he "tell them" what he had in his pockets. *Id.* (Compl. ¶¶ 21–22). The nature of the interaction led Plaintiff to believe that he was not free to leave, and he did not consent to the stop and frisk. *Id.* at 4-6 (Compl. ¶ 11, 22).

In an effort to bolster his allegations, Plaintiff refers to the "Findings of Fact and Merits Determination from the Government of the District of Columbia [O]ffice of [P]olice [C]omplaint[s]" throughout his complaint. *Id.* at 4 (Compl. ¶ 10). Although he does not attach a copy of that report to his complaint, Plaintiff alleges that the Findings of Fact and Merits

2

Determination "f[ound] that there was no bulge in the Plaintiff's pocket." *Id.* He also alleges that MPD "admits there was no bulge in [his] jacket pocket" and that the "[u]nion's observation presented in the complaint states that 'it was highly unlikely that the subject officers would have been able to see a bulge in the shape of a gun or weapon.'" *Id.* at 5 (Compl. ¶ 12). And, perhaps most significantly, he alleges that the report determined that "the officers violated MPRD General Orders and did not have [] reasonable suspicion to frisk the Plaintiff." *Id.* (Compl. ¶ 14).

Plaintiff commenced this action on January 19, 2024, by filing a suit against the MDP and officers Delborrell and Bewley in the Superior Court, seeking compensatory damages in the amount of $150,000. Dkt. 1-1 at 4 (Compl. ¶¶ 2–6). Defendants timely removed the action to this Court, Dkt. 1 (Notice of Removal), and have now moved to dismiss the complaint for failure to state a claim, Dkt. 7. Plaintiff opposes the motion, Dkt. 8, and also seeks leave to file an amended complaint.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal

quotation marks omitted).  The Court, however, need not accept "a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

Plaintiff asserts three claims: (1) a negligence claim, (2) a false imprisonment claim, and (3) a Section 1983 claim.  As currently framed, Plaintiff's complaint seeks relief from the MPD and the individual officers.  The Court will start with the amenability of the MPD to suit before turning to the substance of Plaintiff's claims.

**A.    Claims Against the MPD and Leave to Amend**

Defendants correctly observe that the MDP is *non sui juris* and, therefore, is not a proper party to this suit.  "'[I]n the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities.'"  *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 231 (D.D.C. 2017) (alteration in original) (quoting *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011)); *see also Roberson v. D.C. Bd. Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976) (explaining that an entity within D.C. government may only be sued if the entity is statutorily a separate legal entity).  Here, the MDP is an independent agency within D.C. government.

Plaintiff does not take issue with this reasoning in his opposition brief but, rather, states that he "will be filing a motion [for] leave to amend the complaint" to name the District of Columbia in lieu of the MPD.  Dkt. 8 at 2.  In response, Defendants note that merely substituting the District of Columbia for the MPD will not save Plaintiff's complaint, because he has failed to "plead that a custom or practice of the District was the moving force that cause[d] his alleged injury."  Dkt. 9 at 3. Defendants are correct that a plaintiff seeking to recover from the District of Columbia under Section 1983 for an alleged violation of his Fourth Amendment rights must,

4

under *Monell*, 436 U.S. at 694, plead both a constitutional violation and that a custom or policy of the District of Columbia caused that violation. They are also correct that, to state a claim, the plaintiff must allege facts in his complaint that plausibly state a claim under *Monell* and that arguments set forth in an opposition brief do not count. *See Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018) ("It is axiomatic . . . that a party may not amend his complaint through an opposition brief.") (internal quotation marks and citation omitted).

"The decision to grant or deny leave to amend . . . is vested to the sound discretion of the district court," *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977), and "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). Where new allegations will "clarify, but [] not reshape the action," granting leave to amend is favored. *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 324 (D.D.C. 2011). Here, however, merely substituting the District of Columbia for the MDP will not solve the problem; such an amendment would be futile given the requirements for stating a municipal liability claim that are set forth in *Monell* and its progeny. It would not be futile, however, to the extent Plaintiff can allege facts sufficient to satisfy the *Monell* standard.

In light of all of this—and recognizing that the better course would have been for Plaintiff to file a motion for leave to amend accompanied by a proposed, amended complaint—the Court will proceed as follows: The Court will, first, dismiss Plaintiff's claim against the MPD. All agree that that entity is not subject to suit. Second, the Court will deny Plaintiff's request merely to substitute the District of Columbia for the MPD. To do so would be futile. Third, the Court will grant Plaintiff's request for leave to file an amended complaint, but on the condition that Plaintiff may do so only if he can, in good faith, allege facts sufficient to satisfy the *Monell* standard.

**B.     Negligence**

Although the Court has dismissed all claims against the MPD, Plaintiff's negligence claim against the individual officers remains—at least for the moment. "The elements of a cause of action for negligence are (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) damage to the interests of the plaintiff, (4) proximately caused by the breach." *Goolsby v. District of Columbia*, 354 F. Supp. 3d 69, 74 (D.D.C. 2019) (quoting *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001)). Under D.C. law, however, "negligence must be distinctly pled," and to state a claim, a plaintiff must present "at least one factual scenario" that is "violative of a distinct standard of care." *District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003)); *see also Stewart-Veal v. District of Columbia*, 896 A.2d 232, 235 (D.C. 2006) (affirming dismissal of the plaintiff's negligence claim because it was "not separate and distinct from [the plaintiff's] false arrest claim; rather, it is intertwined with and dependent on that claim"); *see also McCrea v. D.C.*, No. 16-cv-808, 2023 WL 3995638, at *4 (D.D.C. June 14, 2023).

Here, Plaintiff alleges that Defendants owed him a "duty of care so as not to falsely accuse him of a crime with[out] any probable cause," Dkt. 1-1 at 5 (Compl. ¶ 15), and he contends that they "acted negligently by unlawful[ly] searching [him] without his consent or the requisite probable cause," *id.* (Compl. ¶ 16). Understood in this light, Plaintiff's negligence claim is not "separate and distinct" from his false imprisonment claim; it relies on the same factual allegations and allegedly unlawful conduct—namely, the unlawful stop and detention of Plaintiff. *See Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 47 (D.D.C. 2015) (dismissing the plaintiff's negligence claim against police officers because the "allegations . . . d[id] not plead a distinct theory of negligence; rather, they [went] to whether the officers had probable

6

cause and whether they were immune."); *see also Stewart-Veal*, 896 A.2d at 235. As a result, Plaintiff's negligence claim fails as a matter of law. Notably, Plaintiff does not even attempt to defend his negligence claim in his opposition brief.

The Court will, accordingly, dismiss Plaintiff's negligence claim on two, independent grounds: First, the claim fails as a matter of law. Second, the Court can—and should—treat Defendants' motion to dismiss the claim as conceded. *See* Local Civ. R. 7(b); *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015).

**C.     False Imprisonment**

A false imprisonment claim has two elements: "(1) the detention or restraint of one against his will, within boundaries fixed by the defendant[s], and (2) the unlawfulness of the restraint." *Jones v. District of Columbia*, No. 16-cv-2405, 2019 WL 5690341, at *6 (D.D.C. June 13, 2019) (quoting *Faniel v. Chesapeake & Potomac Tel. Co.*, 404 A.2d 147, 150 (D.C. 1979)). Here, Plaintiff alleges that Defendants "demanded" that he "stop" and accused him of "carrying a weapon." Dkt. 1-1 at 6 (Compl. ¶ 19). Defendants then allegedly "restrict[ed] [Plaintiff] from going back to []his home," and he did not "feel [like he could] . . . leave [the interaction] freely." *Id.* (Compl. ¶¶ 21–22). Plaintiff, accordingly, maintains that Defendants "unlawfully and intentionally detained" him. *Id.* (Compl. ¶ 20).

The Court's analysis, however, begins and ends with timeliness. D.C. Code Section 12-301 imposes a one-year statute of limitations for claims of false arrest and false imprisonment. *See* D.C. Code § 12-301(4). The statute of limitations accrued on the day of Plaintiff's alleged false imprisonment, January 20, 2021. But because the events at issue occurred during the COVID-19 pandemic, the statute of limitations was tolled until July 31, 2022. Dkt. 7-3 at 2. Plaintiff, however, did not file suit until January 19, 2024. *See* Dkt. 1-1 at 1 (Compl.).

Although Defendants' motion to dismiss addresses the statute of limitations in detail, Plaintiff, once again, ignores the issue in his opposition brief. He has, accordingly, conceded that the claim is untimely. *See* Local Civ. R. 7(b). But the Court also notes that Defendants are correct on the law. The statute of limitations is one year, and even with the COVID tolling rule, Plaintiff's claim was not filed until long after the statute of limitations expired. Although the D.C. Circuit has cautioned that "courts should hesitate to dismiss a [claim] on statute of limitations grounds based solely on the face of the complaint," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), here, there is no "contested question[] of fact" regarding timeliness, and thus "dismissal is appropriate" on the ground that the claim is, "on its face," "conclusively time-barred," *id.*

The Court will, accordingly, dismiss Plaintiff's false imprisonment claim.

**D.     Fourth Amendment**

That leaves Plaintiff's Section 1983 claim against the individual Defendants. Plaintiff alleges that they violated his rights under the Fourth Amendment when they "stopped and searched" him "without any reasonable articulable suspicion of any wrongdoing." Dkt. 1-1 at 6 (Compl. ¶ 23). He argues that he was "racial[lly] profiled" and that he was "[a]ccused of carrying a weapon with no reasonable and articulable suspicion." *Id.* (Compl. ¶ 25). He further alleges that he did not engage in any behavior that could have given rise to a reasonable suspicion that he was unlawfully carrying a firearm. *Id.* (Compl. ¶ 25). Construing the complaint in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, *Iqbal*, 556 U.S. at 679, the Court reads the complaint plausibly to allege that the two officers did not observe a bulge that resembled a gun and did not observe any other suspicious behavior, but that they nonetheless stopped and frisked Plaintiff. The truth of those allegations,

of course, are not before the Court at this time; the only question is whether Plaintiff has alleged facts sufficient to state a claim.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. There are two different types of seizures: (1) arrests which require that an officer have probable cause, *see Payton v. New York*, 445 U.S. 573, 603 (1980), and (2) *Terry* stops, "temporary detentions for investigative purposes," *Goolsby v. District of Columbia*, 317 F. Supp. 3d 582, 591 (D.D.C. 2018), which require only that an officer have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted). Plaintiff's complaint is not a picture of clarity, but it appears that Plaintiff intends to allege only that the officers conducted a *Terry* stop and frisk without reasonable suspicion; he does not appear to allege that the stop ever crossed the line from a stop to an arrest, which would have required probable cause.

For purposes of determining whether a *Terry* stop was justified, courts are required to "look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." *United States v. McKie*, 951 F.2d 399, 402 (D.C. Cir. 1991) (per curiam); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (concluding that *Terry* stops require only that officers have "a minimal level of objective justification") (internal quotation marks and citation omitted). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

At this early stage of the proceeding, the Court is persuaded that Plaintiff has alleged enough—although just enough—to state a Section 1983 claim against the individual officers.  He has plausibly alleged that it is "highly unlikely" that the "officers would have been able to see a bulge in the shape of a gun or weapon," Dkt. 1-1 (Compl. ¶ 12), and that Plaintiff did not engage in any suspicious behavior like blading or walking away at an "increase[d] . . . pace," *id.* (Compl. ¶ 13).  He further alleges that "the officers violated MPRD General Orders and did not have [] reasonable suspicion to frisk" him.  *Id.* (Compl. ¶ 14).  In response, Defendants argue that the officers are entitled to qualified immunity and that "Plaintiff identifies only statements made without first-hand knowledge of the incidence."  Dkt. 7-2 at 9.

Given Plaintiff's allegations, "various questions remain regarding the legal sufficiency of the justification" for the *Terry* stop, which also prevents the Court from making any determination as to the officers' entitlement to qualified immunity.  *Goolsby v. District of Columbia*, 354 F. Supp. 3d 69, 82 (D.D.C. 2019).  The Court cannot ascertain, on the bare record before it, whether the officers had a reasonable suspicion sufficient to conduct a *Terry* stop or whether, as Plaintiff alleges, they stopped and frisked him without any colorable legal basis.  Under these circumstances, the Court cannot dismiss the complaint, *id.* at 82, and must wait for some factual development before resolving the merits of the claim or the individual Defendants' qualified immunity defense.

The Court will, accordingly, deny Defendants' motion to dismiss Plaintiff's Fourth Amendment claim against the individual Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 7, is hereby **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with respect to the MPD, **GRANTED** as to Plaintiff's negligence and false imprisonment claims, and **DENIED** as to Plaintiff's Section 1983 claim against the individual Defendants.  The Court will also **GRANT** Plaintiff leave to file an amended complaint on or before April 18, 2025, provided that Plaintiff can, in good faith, allege that his asserted Fourth Amendment injuries were caused by a policy or custom of the District of Columbia.  All claims against the MPD and the first and second claims of the complaint against all Defendants are hereby **DISMISSED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 28, 2025