**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

ANTHONY MARSH II,

      *Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

      *Defendants.*

</td><td>

Civil Action No. 24-683 (RDM)

</td></tr>
</table>

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Anthony Marsh brings this case against the District of Columbia and two D.C.

Metropolitan Police Department ("MPD") officers—John Bewley and Anthony DelBorrell—

under both federal and District of Columbia law. Marsh alleges that the MPD Defendants

violated his Fourth Amendment rights during an unjustified January 20, 2021, *Terry* stop and

that the incident was caused by a District of Columbia policy or custom giving rise to municipal

liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See generally* Dkt.

16 (Am. Compl.). The Court granted in part and denied in part Defendants' previous motion to

dismiss Marsh's original complaint, allowing Plaintiff's claims against the MPD Defendants to

proceed while also granting Plaintiff leave to file an amended complaint to add the District as a

defendant—provided that Plaintiff could, in good faith, allege that his asserted Fourth

Amendment injuries were caused by a D.C. policy or custom. *Marsh v. Bewley* ("*Marsh I*"), No.

24-cv-683, 2025 WL 947518, at *5 (D.D.C. Mar. 28, 2025).

Plaintiff filed an amended complaint, *see* Dkt. 16 (Am. Compl.), and Defendants have

once again moved to dismiss, *see* Dkt. 17. Although Defendants do not renew their prior effort

to dismiss the constitutional claims against the individual MPD officers, they argue, among other

things, that Marsh has failed adequately to allege that the District has maintained an unconstitutional policy or custom or had notice of a need for additional officer training or supervision, *id.* at 1; that the D.C. Human Rights Act ("DCHRA") does not apply to the type of racially discriminatory police practices alleged, *id.*; and that Plaintiff's request for a declaratory judgment ought not be considered as a stand-alone claim, *id.* at 2.

Because Plaintiff's amended complaint lacks sufficient factual allegations to support a *Monell* claim against the District of Columbia, and also fails to assert a plausible entitlement to relief under the DCHRA, the Court will **GRANT** Defendants' partial motion to dismiss.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's operative complaint, Dkt. 16 (Am. Compl.), which the Court accepts as true for the purpose of resolving the pending motion to dismiss. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015).

"Plaintiff Anthony Marsh II is a resident of the District of Columbia and an African-American adult." Dkt. 16 at 2 (Am. Compl. ¶ 3). On January 20, 2021, at approximately 6:00 p.m., Marsh was out walking his small dog on a residential street near his home. *Id.* at 4 (Am. Compl. ¶ 8). At that time, a team of eight MPD officers, including Officers Bewley and DelBorrell, were on patrol in the area in two unmarked vehicles. *Id.* (Am. Compl. ¶ 9). Upon noticing Marsh, Officers Bewley and DelBorrell decided to conduct an investigatory stop and exited their vehicle to approach Marsh on the sidewalk. *Id.* at 5 (Am. Compl. ¶ 11). The second vehicle also stopped and the remaining six officers from both vehicles exited; some of those officers also approached Marsh, while others stood nearby. *Id.* Officers Bewley and DelBorrell told Marsh that he had been stopped because they saw a bulge in his jacket and wanted to search him for a weapon. *Id.* at 6 (Am. Compl. ¶ 12). Marsh truthfully told the officers he did not have

a weapon.  *Id.*  Nonetheless, the officers conducted a pat-down search of Marsh's "outer

clothing."  *Id.* (Am. Compl. ¶ 13).  No weapon or other contraband was found, *id.* (Am. Compl.

¶ 14), and the officers allowed Marsh to leave the scene after some additional questioning, *id.* at

7–8 (Am. Compl. ¶¶ 14–15).

Following the incident, Marsh filed a complaint with the D.C. Office of Police

Complaints ("OPC").  *Id.* at 8 (Am. Compl. ¶ 16).  The OPC opened an investigation and issued

"Findings of Fact and a Merits Determination" of the complaint, Dkt. 15-3, that sustained

Marsh's allegation of police harassment against Officers Bewley and DelBorrell, Dkt. 16 at 8–9,

11 (Am. Compl. ¶¶ 16–17, 19).  The OPC found that the officers had no adequate legal basis to

stop Marsh and were in violation of "MPD General Orders and applicable law."  *Id.* at 9–11

(Am. Compl. ¶¶ 17–18); *see also* Dkt. 15-3 at 7.  As part of the investigation, the OPC reviewed

footage from the officers' body-worn cameras, which confirmed that there was no visible

"bulge" in Marsh's jacket or any other basis for the stop.  Dkt. 16 at 8–9 (Am. Compl. ¶¶ 16–17).

Officers Bewley and DelBorrell were given short suspensions, but both remained in service

following the incident.[1]  *Id.* at 11 (Am. Compl. ¶ 19).

Marsh further alleges that Officers Bewley and DelBorrell had engaged in similar

unconstitutional conduct on other occasions.  *Id.* at 11–12 (Am. Compl. ¶ 20).  The complaint

alleges that, according to public records, Officer Bewley has been the subject of at least three

previous sustained OPC complaints for officer misconduct, including "two . . . sustained OPC

complaints . . . involving allegations that Officer Bewley . . . harassed individuals whom [he]

suspected of carrying firearms, without adequate cause."  *Id.*  The complaint, however, offers

---

[1] The MPD eventually terminated Officer Bewley in November 2023 after a separate, unrelated arrest for driving under the influence and resisting arrest, but Officer DelBorrell remains employed as an MPD officer.  Dkt. 16 at 13–14 (Am. Compl. ¶ 22).

detail about only one of these episodes.  It alleges, in particular, that in 2020 Officers Bewley and DelBorrell confronted a man—who was carrying a licensed firearm in a fanny pack—outside his home in Southeast D.C. and handcuffed him and searched his wallet without a warrant or consent.  *Id.*  In response to a subsequent complaint, the OPC found that Officer DelBorrell had unlawfully handcuffed the man and used disrespectful language and that Officer Bewley had violated MPD policy by searching the man's wallet.  *Id.*  The complaint fails to identify what, if any, discipline the officers received for this misconduct.  It does allege, however, that Officer Bewley has faced minor disciplinary actions after repeated findings of (unspecified) misconduct, such as "official reprimands" or "education-based training measures." *Id.* at 13 (Am. Compl. ¶ 21) (citation modified).

Plaintiff originally filed this action against the MPD and Officers Bewley and DelBorrell in D.C. Superior Court in January 2024, asserting a claim for an unlawful search and seizure in violation of the Fourth Amendment of the U.S. Constitution as well as common law claims for negligence and false imprisonment.  Dkt. 1 at 1; *see also* Dkt. 1-1 at 5–6 (Compl. ¶¶ 15–27). Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a), 1446(b), Dkt. 3-1 at 2, and then moved to dismiss the complaint, *see* Dkt. 7.  In *Marsh I*, the Court granted the motion to dismiss in part and denied it in part.  With respect to Plaintiff's claim against the MPD, the Court dismissed the MPD as a defendant as all parties agreed that the MPD is *non sui juris*. *Marsh I*, 2025 WL 947518, at *2–3.  The Court also dismissed Plaintiff's negligence and false imprisonment claims against the individual officers, holding that the former failed as a matter of law and that the latter were time-barred, neither of which Plaintiff appeared to dispute.  *Id.* at *3– 4.  The Court denied, however, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim, holding that Plaintiff had plausibly alleged that it is "highly unlikely" that the "officers

would have been able to see a bulge in the shape of a gun or weapon" and that Plaintiff did not engage in any suspicious behavior which would have given the officers the requisite suspicion to carry out the stop-and-frisk. *Id.* at *5 (citation modified). Finally, the Court granted Plaintiff leave to file an amended complaint to add the District of Columbia as a defendant but conditioned doing so on Plaintiff being able to "in good faith[] allege facts sufficient to satisfy the *Monell* standard." *Id.* at *3.

Marsh proceeded to file an amended complaint, *see* Dkt. 16 (Am. Compl.), naming as defendants Officer John Bewley, Officer Anthony DelBorrell, and the District of Columbia, *id.* at 2–3 (Am. Compl. ¶¶ 4–6). Marsh asserts the following claims:

First, he alleges that Officers Bewley and DelBorrell violated his Fourth Amendment rights by stopping and frisking him without any reasonable suspicion of criminal activity or any reasonable basis to believe that he was armed. *Id.* at 14–17 (Am. Compl. ¶¶ 24–29). Defendants do not seek to dismiss this count of the complaint in the pending motion. Dkt. 17 at 1–2.

Second and third, Plaintiff asserts two *Monell* claims for municipal liability against the District. Dkt. 16 at 17–24 (Am. Compl. ¶¶ 30–43). He first contends that the District is liable for the violations of Plaintiff's Fourth Amendment rights because the violations were directly and proximately caused by "a policy, practice, or custom of condoning or tolerating unconstitutional 'stop-and-frisk' encounters by [MPD] officers." *Id.* at 17 (Am. Compl. ¶¶ 31–32). He further claims that the District is liable for its "failure to adequately train, supervise, and/or discipline its police officers in the proper constitutional standards for investigative stops and frisks." *Id.* at 21 (Am. Compl. ¶ 38).

Fourth, Plaintiff alleges that all Defendants also violated his right to equal treatment under the DCHRA, D.C. Code § 2-1401.01 *et seq*, because his stop-and-frisk was based on racial stereotyping, Dkt. 16 at 24–26 (Am. Compl. ¶¶ 44–50).

Finally, Plaintiff asserts a claim under 28 U.S.C. § 2201, seeking a declaratory judgment that Officers Bewley and DelBorrell violated his Fourth Amendment rights and the DCHRA. *Id.* at 26–28 (Am. Compl. ¶¶ 51–54). The parties, however, now agree that the Declaratory Judgment Act does not provide a separate cause of action but, instead, merely offers a particular form of relief. Dkt. 17-1 at 16; Dkt. 19 at 4. Given that concession, the Court will not treat the fifth count as a separate claim.

In response, Defendants filed a second (partial) motion to dismiss, seeking to dismiss Plaintiff's *Monell* claims against the District as well as the DCHRA and declaratory judgment claims against all Defendants. *See* Dkt. 17. The motion to dismiss is now before the Court.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A court must consider the whole complaint, accepting factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Id.* But a court "need not accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

## III. ANALYSIS

### A.    *Monell*

The Court begins with Plaintiff's claims that the District of Columbia—as distinct from the individual MPD Defendants—violated his rights under the Fourth Amendment.  Plaintiff brings these claims through 42 U.S.C. § 1983, which, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Although Section 1983 does not create municipal liability for the deeds of municipal officers under a *respondeat superior* theory, it provides a cause of action against local governing bodies for monetary, declaratory, or injunctive relief where the allegedly unconstitutional government conduct resulted from a municipal policy or custom.  *Monell*, 436 U.S. at 690; *see Jones ex rel. A.H. v. District of Columbia*, 805 F. Supp. 3d 218, 234–35 (D.D.C. 2025).  Beyond violations resulting from an "official policy," *Monell*, 436 U.S. at 690, constitutional deprivations caused by "governmental custom" may also give rise to liability under Section 1983, even if the policy or custom was not formally approved by a decisionmaking authority, *id.* at 690–91 (citation modified).  To state a claim for such municipal liability, a plaintiff must plead facts sufficient to allege (1) that there was a "predicate constitutional violation," and (2) that a government policy or custom caused the violation.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  As discussed above, Defendants do not currently dispute that Plaintiff has adequately alleged a violation of the Fourth Amendment.  Dkt. 17 at 1–2.  The legal sufficiency of that claim carries over to Plaintiff's *Monell* claim, and, thus, the sole remaining

question is whether Plaintiff has plausibly alleged conduct sufficient to constitute a "policy" or "custom" so as to create a proper basis for imposing municipal liability. *Baker*, 326 F.3d at 1306.

There are four categories of municipal action that can establish municipal liability: "(1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference." *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell*, 436 U.S. at 690–94). Plaintiff does not reference any "express municipal policy," *id.*, responsible for his allegedly unlawful stop, nor does he cite any particular decisions or actions of any specific policymaker, *see* Dkt. 16 at 17–24 (Am. Compl. ¶¶ 30–43). Thus, this case turns on the standards for establishing a municipal custom or usage or deliberate indifference by the District.

The Court's analysis proceeds in two parts. First, the Court explains that Plaintiff has not plausibly alleged a municipal policy or custom under *Monell*, since the complaint fails to plead facts demonstrating a widespread, persistent practice attributable to the District, rather than isolated misconduct by individual officers. Second, it examines Plaintiff's claim of deliberate indifference based on alleged failures to train, supervise, or discipline MPD officers, and concludes that the relevant allegations are too conclusory and fail to clear the bar plausibly to allege a basis for municipal liability.

 1.   *Custom or Policy*

The Court starts with Plaintiff's claim that the alleged violations of his Fourth Amendment rights were representative of the District's policy, practice, or custom of condoning or tolerating unconstitutional stop-and-frisks. Dkt. 16 at 17–18 (Am. Compl. ¶¶ 31–32). In the absence of an express policy, a plaintiff "must show a course deliberately pursued by the city" and must "present concentrated, fully packed, precisely delineated scenarios." *Parker v. District*

*of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (citation modified).  For an act to become

custom, it must reflect a practice that "is so widespread as to have the force of law."  *Bd. of Cnty.*

*Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690–91); *see also*

*Carter v. District of Columbia*, No. 22-cv-1681, 2023 WL 4404953, at *6 (D.D.C. July 7, 2023).

Plaintiff's amended complaint does not include sufficient factual allegations plausibly to

allege that the unlawful stop-and-frisk that he experienced resulted from a District policy of

tolerance of misconduct so widespread that it carried the force of law.  Courts applying this

standard have rejected attempts to establish a qualifying municipal custom based on isolated or

thinly supported allegations.  *See, e.g.*, *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985)

(holding that "a single isolated incident" did not permit a reasonable inference that a

municipality had "establishe[d] an official custom or policy"); *Jones v. District of Columbia*, No.

23-cv-1488, 2024 WL 1213326, at *6 (D.D.C. Mar. 21 2024); *Garnett v. Zeilinger*, 485 F. Supp.

3d 206, 231 (D.D.C. 2020) ("a 'single isolated incident' of misconduct . . . can establish

municipal liability *only* if attributed to a municipal policymaker with final decision[]making

authority" (emphasis added) (quoting *Tuttle*, 471 U.S. at 821)).  Here, Plaintiff first makes

general references to "repeated complaints and findings of similar violations by MPD officers,"

Dkt. 16 at 18 (Am. Compl. ¶ 33), and further alleges that "[t]he constitutional violations suffered

by Plaintiff were directly and proximately caused by one or more policies, customs, or practices

of the District . . . amounting to deliberate indifference," *id.* at 17 (Am. Compl. ¶ 31).  Standing

alone, such "[t]hreadbare recitals of the elements of a cause of action," and other conclusory

statements do not suffice to make out a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

Plaintiff also seeks to rely on his own experience of misconduct to establish a broader municipal

custom.  Dkt. 16 at 11–12 (Am. Compl. ¶ 20).  Barring a "showing of obviousness," *Connick v.*

*Thompson*, 563 U.S. 51, 63 (2011) (citation modified), however, allegations limited to a plaintiff's own experience are typically insufficient plausibly to allege a policy or custom, *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 28 (D.D.C. 2014); *see, e.g.*, *Page v. Mancuso*, 999 F. Supp. 2d 269, 285 (D.D.C. 2013).

The only separate event detailed in Plaintiff's complaint is the 2020 incident where Officers Bewley and DelBorrell were found to have conducted an unlawful arrest and search of a man carrying a licensed firearm outside his home in southeast D.C.  Dkt. 16 at 12 (Am. Compl. ¶ 20).  Although Plaintiff's strongest argument, this too does not lend sufficient specificity to Plaintiff's claim.  As an initial matter, the nature of the alleged misconduct appears to be distinguishable from Plaintiff's own treatment and would thus fall outside of the alleged "custom or policy" of condoning unconstitutional stop-and-frisks.  Plaintiff alleges that the 2020 incident involved not an unlawful stop and frisk, but a full search incident to the man's handcuffing and arrest, which is governed by a different Fourth Amendment standard of suspicion.  *See id.*; *see also United States v. Smith*, 373 F. Supp. 3d 223, 237–39 (D.D.C. 2019) (noting that the use of handcuffs typically converts an investigatory *Terry* stop into an arrest requiring probable cause).  Unlike Plaintiff's claim, moreover, that case involved alleged harassment of someone who was, in fact, carrying a gun and who had a permit to do so.  More importantly, even if the alleged facts were similar to those at issue here, one isolated event is insufficient to make out a *Monell* claim.  *See Tuttle*, 471 U.S. at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

The standard for establishing municipal liability is undoubtedly high, but it is also not subject to a brightline rule. At one extreme, evidence of more than twenty occasions of misconduct and statements made by public officials regarding the challenged practice sufficed to overcome a motion to dismiss. *Drayton ex rel. Estate of Estep v. District of Columbia*, __ F. Supp. 3d __, No. 24-3023, 2026 WL 74133, at \*11–12 (D.D.C. Jan. 9, 2026). But that scenario does not establish a minimum necessary to allege a *Monell* claim. The Court must ensure that a plaintiff seeking to assert a *Monell* claim has alleged more than a claim for *respondeat superior* liability but, at least at the motion to dismiss stage, need not require the plaintiff to identify every prior episode of misconduct that the municipality has let go by without an appropriate response.

Beyond Plaintiff's own experience, the 2020 incident, and a third incident that is mentioned only in cursory terms, Plaintiff relies only on conclusory allegations that Officers Bewley and DelBorrell frequently "stopped or searched individuals without lawful justification"—which, as Plaintiff concedes, was a "*violation* of MPD policy." Dkt. 16 at 12 (Am. Compl. ¶ 20) (emphasis added). More than a single prior incident, which involved someone who (unlike Plaintiff) actually possessed a gun, *id.*; a second incident that the complaint characterizes as "similar" but without including any detail, *id.*; and a series of wholly conclusory allegations, *see, e.g.*, *id.* at 18 (Am. Compl. ¶ 33) (alleging "repeated complaints and findings of similar violations by MPD officers" that "reflect a persistent, widespread practice"), is required plausibly to allege that Plaintiff's unlawful stop was attributable to a broader District custom that carried the force of law.

Because Plaintiff has not alleged facts sufficient plausibly to allege a widespread practice that could indicate the District's deliberate condoning of wrongful conduct, he has not met his burden at the pleading stage to establish a custom or policy for purposes of municipal liability.

11

2.      *Failure to Train, Supervise, or Discipline*

The Court next turns to Plaintiff's claim that the District acted with deliberate

indifference to its citizens' constitutional rights when it failed to adequately train, supervise, or

discipline MPD officers.  Municipal liability stemming from deliberate indifference "occurs

when a municipality knew or should have known of a risk that constitutional violations would

occur, but did nothing to prevent those violations."  *Page*, 999 F. Supp. 2d at 282 (citing *Baker*,

326 F.3d at 1306–07).  A "policy of inaction" can be considered deliberate indifference where a

municipality is faced "with actual or constructive knowledge" of a substantial risk of harm.

*Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 121 (D.D.C. 2012).  To establish that a

municipality had actual or constructive notice, a plaintiff "ordinarily" must identify a "pattern of

similar constitutional violations by untrained employees."  *Costello v. District of Columbia*, 826

F. Supp. 2d 221, 225–26 (D.D.C. 2011) (quoting *Brown*, 520 U.S. at 409).

In addition, a municipality's failure to train, supervise or discipline employees can

constitute a policy or custom if that failure amounts to "deliberate indifference" to individual

constitutional rights.  *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000).  But

a complaint must allege facts that "may reasonably suggest misconduct sufficiently serious and

obvious to justify an allegation of improper training in the use of force."  *Atchinson v. District of

Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996) (emphasis omitted).  General allegations that a

government "followed policies and practices . . . that did not require and provide adequate

training, supervision, and discipline" cannot survive a motion to dismiss because they do not go

beyond reciting the "elements of custom or policy liability based on deliberate indifference."

*Martin v. District of Columbia*, 720 F. Supp. 2d 19, 23 (D.D.C. 2010) (citation modified); *see

Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 88 (D.D.C. 2016) (finding that allegations of

police abuse and District indifference, unsupported by specific facts, were insufficient to state a plausible claim for relief).

Plaintiff alleges that the District knew or should have known of the risk of constitutional violations by certain MPD officers, contending that prior incidents, including multiple complaints for unlawful stops or searches, put the District on notice.  Dkt. 16 at 22 (Am. Compl. ¶ 40).  Such allegations, if sufficiently developed, might support a reasonable inference of actual or constructive notice.  Here, however, Plaintiff does not allege a pattern of similar, specifically identified constitutional violations by untrained employees.  *See Connick*, 563 U.S. at 62; *Costello*, 826 F. Supp. 2d at 225–26.  Nor, for that matter, does he meaningfully connect the alleged incidents to any specific defect in training, beyond general, conclusory allegations that the officers in question were untrained.  *See* Dkt. 16 at 21–23 (Am. Compl. ¶¶ 39–41).  *Ipse dixit* assertions that "[t]he need for proper training . . . was obvious," *id.* at 21 (Am. Compl. ¶ 39), linked only to one previous incident (or perhaps two incidents) of alleged unlawful behavior by MPD officers, do not meet Plaintiff's burden of plausibly alleging that the District was on notice of a substantial risk of future unconstitutional injury, prior to the events giving rise to Plaintiff's claim.  Plaintiff argues that "[t]he fact that Defendants felt justified in stopping and frisking Mr. Marsh under the circumstances suggests a deficiency in training or supervision."  *Id.* at 21–22 (Am. Compl. ¶ 39).  But that contention proves too much, since it would turn virtually every *respondeat superior* claim into a *Monell* claim.

Moreover, even if the Court were to assume that the District received notice through prior complaints, Plaintiff's claim would also falter on the element of deliberate indifference.  Rather than claim that the District was unresponsive to reports of violations, the complaint acknowledges that several internal investigations were conducted, that findings of officer

13

misconduct were made, and that the matters were referred for discipline. *Id.* at 11–13 (Am. Compl. ¶¶ 19–21). Although Plaintiff contends that the disciplinary actions were too minor to deter further violations, Plaintiff fails to identify the discipline, if any, that was imposed on the officers for engaging in the one Fourth Amendment violation that is described in any detail. But even putting that omission aside, the existence of the investigations and disciplinary process that Plaintiff does describe undermines a claim that the District maintained a "policy of inaction," and was thereby deliberately indifferent. *Poindexter*, 891 F. Supp. 2d at 121. In *Singh v. District of Columbia*, for example, the Court denied a motion to dismiss a claim for municipal liability where the plaintiff alleged that that misconduct was reported several times, and *nothing* was done. 881 F. Supp. 2d 76, 87 (D.D.C. 2012). Here, by contrast, the District is alleged to have responded to complaints through investigative and disciplinary channels, Dkt. 16 at 11–13 (Am. Compl. ¶¶ 19–21), undermining a claim for a policy of inaction.

The Court does not hold that two or three constitutional violations involving the same officer could never give rise to *Monell* liability under a failure to train or supervise theory. But here, as discussed above, Plaintiff's complaint includes a meaningful description of only a single prior event, which appears to have involved materially different conduct. In the 2020 incident, the man stopped by Officers Bewley and DelBorrell actually possessed a (lawful) firearm, unlike Marsh (who did not possess a gun at all), and the Officers were disciplined for their decision to handcuff the man and to search his wallet, rather than the initial stop. *Id.* at 12 (Am. Compl. ¶ 20). Plaintiff includes no specific factual allegations as to the deficiencies of the previous disciplinary measures that he concedes occurred, other than general, conclusory allegations that MPD's "remedial training[s]" were "ineffective" because they did not successfully prevent his allegedly unlawful stop. *Id.* at 22–23 (Am. Compl. ¶ 41). Plaintiff does not allege that the

14

District "engaged in deliberate indifference by failing to take any ostensible action in response" to reports of violations of MPD policy, *Singh*, 881 F. Supp. 2d at 87, and he offers no basis for a plausible inference that the District's current training and supervision methods were constitutionally deficient other than their failure to prevent his own mistreatment. *Monell* requires more.

Ultimately, Plaintiff's failure to train, supervise, or discipline theory, like his allegation of a policy or custom, rests on little more than general and conclusory assertions that the District maintained inadequate policies and practices. Plaintiff does not connect specific deficiencies in training or supervision to the alleged constitutional violation; nor does he plausibly allege a pattern of similar constitutional violations or facts demonstrating misconduct so obvious and serious as to support an inference of improper training under *Atchinson*, 73 F.3d at 422–23.

\* \* \*

Because Plaintiff's amended complaint lacks factual allegations sufficient to create a plausible inference that a District custom or policy was responsible for his unlawful stop, or that the District's failure to train or discipline MPD officers amounted to deliberate indifference, the Court will grant Defendants' motion to dismiss the *Monell* claims against the District of Columbia.

**B. DCHRA**

Defendants also move to dismiss Plaintiff's claims—raised for the first time in his amended complaint—alleging that he was discriminated against on the basis of race in violation of the DCHRA. Dkt. 16 at 24–26 (Am. Compl. ¶¶ 44–50). Defendants raise three objections regarding those claims: (1) Plaintiff did not seek the Court's leave to submit a claim under the DCHRA in his amended complaint; (2) the claims are barred by the one-year statute of limitations applicable to private causes of action under the Act, D.C. Code § 2-1403.16; and

15

(3) the DCHRA is not applicable to this case.  Dkt. 17-1 at 13–15.  The Court need not resolve the first two arguments, because, as discussed below, it concludes that even if the Court were willing to permit Plaintiff to raise an additional DCHRA claim at this late stage of the proceedings and to conclude that it was not barred by the statute of limitations, the claim would still fail as a matter of law.

Although not dispositive here, the Court first notes that the circumstances of Defendants' statute of limitations defense pose a complex question under District law.  At the time Marsh originally filed his complaint in Superior Court in January of 2024, Dkt. 1-1 at 3 (Compl.), the DCHRA established that "[a] private cause of action pursuant to this chapter shall be filed . . . within one year of the unlawful discriminatory act, or the discovery thereof," D.C. Code § 2-1403.16(a) (2015).  Unsurprisingly, Marsh's original complaint—which was filed in D.C. Superior Court on January 19, 2024, *see* Dkt. 1-1 at 3 (Compl.), well beyond the *two-year* anniversary of his January 2021 stop—did not assert a claim under the DCHRA, s*ee generally id* at 3–7 (Compl.).  However, on March 21, 2025, the relevant provision of the DCHRA was amended to include an expanded two-year statute of limitations.  Fairness in Human Rights Administration Amendment Act of 2024, 72 D.C. Reg. 737, 739 (Jan. 31, 2025) (codified at D.C. Code § 2-1403.16(b)(1) (2025)).  On March 28, 2025, the Court granted Marsh leave to amend his complaint, *see Marsh I*, 2025 WL 947518, and he did so on April 18, 2025, *see* Dkts. 15, 16, asserting the DCHRA claim for the first time.  Plaintiff and Defendants dispute whether the DCHRA's amended statute of limitations applies retroactively, Dkt. 19 at 3–4; Dkt. 20 at 7–8, and the statutory language is silent on that question, *see* D.C. Code § 2-1403.16.  The Court is also unaware of D.C. precedent on the question but need not further endeavor to resolve that issue of District law as it does not control the outcome here.

16

Even assuming that the two-year statute of limitations did apply retroactively to this case, that still would not alone suffice to render Plaintiff's claim timely because, as discussed above, his January 2024 complaint was filed more than two years after the event in question. Plaintiff must therefore also rely on a tolling of the statute of limitations as a result of the COVID-19 pandemic. *See* Dkt. 17-1 at 15; Dkt. 19 at 4; Dkt. 20 at 7. Initially, the parties agreed that, under D.C. law, COVID-19 tolled the statute of limitations through July 2022. *See* Dkt. 17-1 at 15; Dkt. 19 at 4. However, in Defendants' reply to Plaintiff's opposition to the motion to dismiss, Defendants argue that the pandemic-era tolling in fact ended in March 2021, citing the D.C. Court of Appeals case *Sonmez v. WP Co.*, 330 A.3d 285, 307 n.4 (D.C. 2025). Dkt. 20 at 7. The Court would therefore first have to agree with Plaintiff that tolling continued through July 2022 in order for his original January 2024 complaint to have been timely under any conceivable theory. But that hypothetical conclusion would still not be the end of the matter, because even assuming that Plaintiff's original complaint was timely, that complaint did not assert a claim under the DCHRA. *See generally* Dkt. 1-1 at 3–7 (Compl.) The Court would thus also need to address whether Plaintiff's April 2025 *amended* complaint, which includes the DCHRA claim, relates back to the original complaint under Federal Rule of Civil Procedure 15(c) and would allow the DCHRA claim to proceed under the (potentially) tolled statute of limitations.

The Court, thankfully, need not resolve those questions because, even if the Court were to assume that Plaintiff's DCHRA claim was timely, it would nonetheless dismiss the DCHRA claim because Plaintiff has not plausibly alleged a violation of the statute in this case. Although Plaintiff's complaint does not specify exactly which portion of the DCHRA he believes applies to this suit, *see* Dkt. 16 at 24–26 (Am. Compl. ¶¶ 44–50), given that he alleges malfeasance by D.C. employees, the Court understands him to be seeking to proceed under Section 2-1402.73,

17

which applies the DCHRA to the D.C. government.  Under that provision, "it shall be an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of" a protected characteristic.  D.C. Code § 2-1402.73.  Plaintiff does not, however, identify any government facility, service, program, or benefit that Officers Bewley and DelBorrell limited or refused to provide to him.  Plaintiff similarly does not identify a single case where any court entertained a DCHRA claim based on analogous alleged discriminatory police conduct brought by the subject of a police arrest or stop, and the Court is not aware of any such case.  *See Orellana-Escobar v. Fernandez*, No. 24-cv-1767, 2026 WL 161189, at *7 (D.D.C. Jan. 21, 2026).

Plaintiff relies on *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987), for the proposition that public services under the DCHRA include law enforcement.  *See* Dkt. 19 at 3.  But that case, which concerns enjoinment of retaliatory transfers during administrative or judicial review of an employment discrimination claim**,** has nothing to do with the facts alleged here.  More importantly, even if the Court were to accept the general proposition that the DCHRA applies to law enforcement, it would not salvage Plaintiff's claims.  The Court is willing to assume that there could be a colorable claim under the DCHRA if, for example, the police refused to provide protection to an individual or to respond to an emergency call based on his or her race.  But those are not the allegations here.  Even under an expansive view of the DCHRA, Plaintiff fails to allege that the MPD Defendants refused to provide him any public service or benefit when they unlawfully stopped and frisked him.  Nor do cases permitting suits against the MPD as an *employer* under the DCHRA, *see, e.g.*, *Lilly v. District of Columbia*, 657 F. Supp. 3d 65, 77 (D.D.C. 2023); *Williams v. District of Columbia*, 317 F. Supp. 3d 195, 201–02 (D.D.C. 2018);

18

*Craig v. District of Columbia*, 881 F. Supp. 2d 26, 29, 34 n.6 (D.D.C. 2012), support Plaintiff's novel theory in this case.

Because Officers Bewley and DelBorrell's alleged misconduct does not fall within the scope of unlawful discriminatory action covered by the DCHRA, the Court will grant Defendants' motion to dismiss the DCHRA claim.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss, Dkt. 17, is hereby **GRANTED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 26, 2026

19